LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs,*
*FLSA Collective Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

───────────────────────────────

FIDEL DE JESUS, and
VICTOR RAMOS
*on behalf of themselves,*
*FLSA Collective Plaintiffs and the Class,*

                 Plaintiffs,

                v.

OYSHI TABLE CORP. d/b/a TOASTIES,
JOHN DOE CORPORATIONS 1-4 d/b/a TOASTIES,
MATTHEW AHN,
ROBERT KIM,
ELLIOT LEE,
JIN CHOI, and
HELEN LEE,

                 Defendants.

───────────────────────────────

Case No.:

**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**

Jury Trial Demanded

       Plaintiffs, FIDEL DE JESUS and VICTOR RAMOS (herein, "Plaintiffs"), on behalf of

themselves and others similarly situated, by and through their undersigned attorneys, hereby file

this class and collective action Complaint against Defendants, OYSHI TABLE CORP. d/b/a

TOASTIES, and JOHN DOE CORPORATIONS 1-4 d/b/a TOASTIES (together the "Corporate

Defendants"), MATTHEW AHN, ROBERT KIM, ELLIOT LEE, JIN CHOI, and HELEN LEE

("Individual Defendants," and together with Corporate Defendants, "Defendants"), and state as follows:

## INTRODUCTION

1.    Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that they are entitled to recover from Defendants: (1) unpaid wages due to time shaving, (2) unpaid minimum wage, (3) unpaid overtime, (4) illegally retained gratuities, (5) liquidated damages, and (6) attorneys' fees and costs.

2.    Plaintiffs further allege that, pursuant to the New York Labor Law ("NYLL"), they are entitled to recover from Defendants: (1) unpaid wages due to time shaving, (2) unpaid minimum wage, (3) unpaid overtime, (4) illegally retained gratuities, (5) unpaid spread of hours premium, (6) improper meal credit deductions, (7) unreimbursed costs for tools of trade and maintenance, (8) statutory penalties, (9) liquidated damages, and (10) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

4.    Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

## PARTIES

5.    Plaintiff FIDEL DE JESUS is a resident of Queens County, New York.

6.    Plaintiff VICTOR RAMOS is a resident of Bronx County, New York.

7.    Defendants own and operate a restaurant enterprise under the trade name "Toasties" at the following locations:

      a.  924 Third Avenue, New York, New York 10022 ("Toasties at 55th");

> b.  148 W 49th Street, New York, New York 10019 ("Toasties at W 49th");
>
> c.  6 E 48th Street, New York, New York 10017 ("Toasties at E 48th");
>
> d.  23 E 51st Street, New York, New York 10022 ("Toasties at E 51st"); and
>
> e.  599 Lexington Avenue, New York, New York 10022 ("Toasties at E 52nd"); and (together, the "Restaurants.").

Specifically, the Restaurants are or were engaged in related activities, shared common ownership and had a common business purpose. The Restaurants are commonly owned and controlled by Individual Defendants, who are related individuals. *See* EXHIBIT A, Defendants' webpage ("Toasties is a family owned and operated New York Gourmet Delicatessen"). Defendants jointly advertise their Restaurants on their webpage. *Id*. Defendants provide mutually supportive services by maintaining a joint online delivery service through the main Toasties' webpage. *Id*. In addition, employees, including Plaintiff FIDEL DE JESUS, work interchangeably between the Restaurants.

8.    Defendants operate the Restaurants through the following Corporate Defendants:

(a)  Corporate Defendant OYSHI TABLE CORP. is a domestic business corporation organized under the laws of the State of New York, with a principal place of business and an address for service of process located at 924 Third Avenue, New York, New York 10022. Individual Defendants are the owners of OYSHI TABLE CORP.

(b)  Corporate Defendants JOHN DOE CORPORATIONS 1-4 are various business corporations doing business as one of the Restaurants throughout New York State, which employ FLSA Collective Plaintiffs and Class Members under a common wage and hour policy. Individual Defendants are the owners of JOHN DOE CORPORATIONS 1-4.

9.     Individual Defendants are all related individuals who commonly own and operate the Restaurants.

10.     Individual Defendants:

(a) Individual Defendant MATTHEW AHN is an owner and/or executive officer of Corporate Defendants. MATTHEW AHN exercised control over the terms and conditions of Plaintiffs' employment and those of FLSA Collective Plaintiffs and the Class. With respect to Plaintiffs, FLSA Collective Plaintiffs and the Class, he exercised the power to (i) fire and hire, (ii) determine rate and method of pay, (iii) set employee schedules, and (iv) otherwise affect the quality of employment. At all times, employees could complain to MATTHEW AHN regarding any of the terms of their employment, and MATTHEW AHN would have the authority to effect any changes to the quality and terms of employees' employment. MATTHEW AHN ensure that employees effectively serve customers and that the business is operating efficiently and profitably. MATTHEW AHN exercised functional control over the business and financial operations of all Corporate Defendants. MATTHEW AHN had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs and Class members and could reprimand employees.

(b) Individual Defendant ROBERT KIM is an owner and/or executive officer of Corporate Defendants. ROBERT KIM exercised control over the terms and conditions of Plaintiffs' employment and those of FLSA Collective Plaintiffs and the Class. With respect to Plaintiffs, FLSA Collective Plaintiffs and the Class, he exercised the power to (i) fire and hire, (ii) determine rate and method of pay, (iii) set employee schedules, and (iv) otherwise affect the quality of employment. At all times, employees could complain to ROBERT KIM regarding any of the terms of their employment, and ROBERT KIM would have the authority to effect any

changes to the quality and terms of employees' employment. ROBERT KIM ensure that employees effectively serve customers and that the business is operating efficiently and profitably. ROBERT KIM exercised functional control over the business and financial operations of all Corporate Defendants. ROBERT KIM had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs and Class members and could reprimand employees.

(c) Individual Defendant ELLIOT LEE is an owner and/or executive officer of Corporate Defendants. ELLIOT LEE exercised control over the terms and conditions of Plaintiffs' employment and those of FLSA Collective Plaintiffs and the Class. With respect to Plaintiffs, FLSA Collective Plaintiffs and the Class, he exercised the power to (i) fire and hire, (ii) determine rate and method of pay, (iii) set employee schedules, and (iv) otherwise affect the quality of employment. At all times, employees could complain to ELLIOT LEE regarding any of the terms of their employment, and ELLIOT LEE would have the authority to effect any changes to the quality and terms of employees' employment. ELLIOT LEE ensure that employees effectively serve customers and that the business is operating efficiently and profitably. ELLIOT LEE exercised functional control over the business and financial operations of all Corporate Defendants. ELLIOT LEE had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs and Class members and could reprimand employees.

(d) Individual Defendant JIN CHOI is an owner and/or executive officer of Corporate Defendants. JIN CHOI exercised control over the terms and conditions of Plaintiffs' employment and those of FLSA Collective Plaintiffs and the Class. With respect to Plaintiffs, FLSA Collective Plaintiffs and the Class, he exercised the power to (i) fire and hire, (ii) determine rate

and method of pay, (iii) set employee schedules, and (iv) otherwise affect the quality of employment. At all times, employees could complain to JIN CHOI regarding any of the terms of their employment, and JIN CHOI would have the authority to effect any changes to the quality and terms of employees' employment. JIN CHOI ensure that employees effectively serve customers and that the business is operating efficiently and profitably. JIN CHOI exercised functional control over the business and financial operations of all Corporate Defendants. JIN CHOI had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs and Class members and could reprimand employees.

(e) Individual Defendant HELEN LEE is an owner and/or executive officer of Corporate Defendants. HELEN LEE exercised control over the terms and conditions of Plaintiffs' employment and those of FLSA Collective Plaintiffs and the Class. With respect to Plaintiffs, FLSA Collective Plaintiffs and the Class, he exercised the power to (i) fire and hire, (ii) determine rate and method of pay, (iii) set employee schedules, and (iv) otherwise affect the quality of employment. At all times, employees could complain to HELEN LEE regarding any of the terms of their employment, and HELEN LEE would have the authority to effect any changes to the quality and terms of employees' employment. HELEN LEE ensure that employees effectively serve customers and that the business is operating efficiently and profitably. HELEN LEE exercised functional control over the business and financial operations of all Corporate Defendants. HELEN LEE had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs and Class members and could reprimand employees.

11.   At all relevant times, each of the Corporate Defendants was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and New York Labor Law and the Regulations thereunder.

12.   At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs and Class members were directly essential to the businesses operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

13.   Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt back-of-house employees and delivery persons employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

14.    At all relevant times, Plaintiffs and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages. A subclass of tipped employees also has a claim for unpaid minimum wage and overtime, including those due to an improperly deducted tip credit and time-shaving, and a claim for illegally retained tips. The claims of Plaintiffs stated herein are essentially the same as those of other FLSA Collective Plaintiffs.

15.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

16.    Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure

("F.R.C.P.") Rule 23, on behalf of all non-exempt back-of-house employees and delivery persons employed by Defendants at the Restaurants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

17.    All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

18.    The proposed Class is numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of tipped employees ("Tipped Subclass") who also number more than forty (40). Plaintiff VICTOR RAMOS is a member of both the Class and the Tipped Subclass.

19.    Plaintiffs' claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay proper minimum wages, (ii) failing to pay overtime premiums for hours worked in excess of forty (40) in a workweek, (iii) failing to pay spread of hours premium, (iv) improperly claiming a meal credit allowance, (v) failing to provide Class members with proper wage statements with every payment of wages, and

(vi) failing to properly provide wage notices to Class members, at date of hiring and annually, per requirements of the New York Labor Law.

20.     With regard to Plaintiff VICTOR RAMOS and the Tipped Subclass, Defendants also (i) failed to pay them the proper minimum wage and overtime because Defendants were not entitled to claim any tip credit because they failed to meet statutory requirements under the New York Labor Law, (ii) failed to pay them proper wages due to time-shaving, (iii) illegally retained gratuities, and (iv) failed to reimburse Plaintiff and the Tipped Subclass for tools of the trade costs and maintenance. Plaintiff VICTOR RAMOS and the Tipped Subclass suffered from Defendants' failure to pay minimum wages and their proper overtime due to Defendants' invalid tip credit allowance because Defendants (i) failed to properly provide tip credit notice at hiring and annually thereafter, (ii) claimed a tip credit that exceeded the statutory amount permissible, (iii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek, (iv) implemented an invalid tip pooling scheme in which Defendants participated in the tip pool and illegally retained tips, (v) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period, and (vi) failed to accurately keep track of daily tips earned and maintain records thereof. Defendants participated in the tip pool and illegally retained fifteen (15%) percent of tips earned through delivery and illegally retained fifty (50%) of tips from catering events.

21.     Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

22.    Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented Plaintiffs in wage and hour cases.

23.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In

addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

24.    Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

25.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.    Whether Defendants employed Plaintiffs and the Class within the meaning of the New York law;

b.    What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiffs and the Class members;

c.    At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiffs and the Class members for their work;

d.    Whether Defendants properly notified Plaintiffs and the Class members of their hourly rates and overtime rates;

e.    Whether Defendants paid Plaintiffs and Class members the proper overtime compensation under the New York Labor Law;

f.    Whether Defendants properly provided notice to all tipped employees that Defendants were taking a tip credit;

g.  Whether Defendants accurately tracked the amount of tips earned each day and maintained records thereof;

h.  Whether Defendants caused tipped employees to engage in non-tipped duties exceeding 20% of each workweek;

i.  Whether Defendants took the proper amount of tip credit allowance for each payment period under the New York Labor Law;

j.  Whether Defendants established an invalid tip pooling arrangement by participating in the tip pool;

k.  Whether Defendants established an invalid tip pooling arrangement by instituting an invalid tip pooling scheme in which Plaintiff and the Tipped Subclass did not agree to;

l.  Whether Defendants retained any portion of the gratuities for their tipped employees;

m.  Whether Defendants provided proper wage statements informing (i) tipped employees of the amount of tip credit taken for each payment period, and (ii) all non-exempt employees of information required to be provided on wage statements under the New York Labor Law;

n.  Whether Defendants provided proper wage notice, at date of hiring and annually thereafter, to all non-exempt employees per requirements of the New York Labor Law;

o.  Whether Defendants paid Plaintiffs and Class members the proper wage for all hours worked;

p.    Whether Defendants properly compensated Plaintiffs and Class members their proper overtime under state law;

q.    Whether Defendants paid Plaintiffs and Class members the New York State "spread of hours" premium when their workdays exceeded ten hours;

r.    Whether Defendants paid Plaintiff and the Tipped Subclass for tools of trade and maintenance costs; and

s.    Whether Defendants claimed an invalid meal credit.

## STATEMENT OF FACTS

26.    Plaintiff FIDEL DE JESUS:

(a) In or around January 2009, Plaintiff FIDEL DE JESUS was hired by Defendants to work as a food preparer at Defendants' Toasties restaurant, located at 924 Third Avenue, New York, New York 10022 ("Toasties at 55th"). Although Plaintiff FIDEL DE JESUS worked predominantly at "Toasties at 55th," throughout his employment with Defendants, he worked at Defendants' four other Toasties restaurant locations on a temporary basis when other locations were short-staffed. Plaintiff FIDEL DE JESUS worked for Defendants until in or around February 2018.

(b) From in or around January 2012 through December 2014, Plaintiff FIDEL DE JESUS was scheduled to work fifty-five (55) hours per week from 9:00am to 8:00pm for five (5) days per week. From in or around January 2015 through the end of Plaintiff FIDEL DE JESUS's employment with Defendants, Plaintiff FIDEL DE JESUS was scheduled to work fifty (50) hours per week from 7:00am to 5:00pm for five (5) days per week. Plaintiff FIDEL DE JESUS was regularly required to work without any breaks.

(c) Plaintiff FIDEL DE JESUS regularly worked over forty (40) hours per workweek, but Defendants failed to compensate him for his overtime hours worked. From in or around January 2012 through December 2014, Defendants paid Plaintiff FIDEL DE JESUS on an illegal fixed salary basis of $320 per workweek, regardless of actual hours worked. This amounted to a rate of $8.00 per hour, for the first forty (40) hours. From in or around January 2015 through the end of Plaintiff FIDEL DE JESUS's employment, Defendants paid Plaintiff FIDEL DE JESUS on an illegal fixed salary basis of $380 per workweek, regardless of actual hours worked. This amounted to a rate of $9.50 per hour, for the first forty (40) hours, which is below the prevailing New York minimum wage rate in 2017 and 2018, which was $11.00 and $13.00, respectively. There was never any understanding that the fixed salary was intended to cover any overtime hours worked by Plaintiff FIDEL DE JESUS, and as such, he was not paid for any of his overtime hours worked. Other non-exempt employees were similarly paid on an illegal fixed salary basis and were not compensated for their proper minimum wages and for their overtime premium of time and a half for all hours worked over forty (40).

(d) Although Plaintiff FIDEL DE JESUS worked as a food preparer, Defendants occasionally required Plaintiff to make deliveries. However, at all times, Defendants retained 15% of the gratuities earned from deliveries and Defendants retained 50% of the gratuities earned from catering deliveries.

27.    Plaintiff VICTOR RAMOS:

(a) In or around March 2017, Plaintiff VICTOR RAMOS was hired by Defendants to work as a delivery person at Defendants' Toasties restaurant, located at 924 Third Avenue, New York, New York 10022 ("Toasties at 55th"). Plaintiff VICTOR RAMOS worked for Defendants until on or about April 10, 2018.

14

(b) In 2017, Plaintiff VICTOR RAMOS was scheduled to work between fifty-two and a half (52.5) and sixty-three (63) hours per week from 5:30am to 4:00pm for five to six days a week. In 2018, Plaintiff VICTOR RAMOS was scheduled to work between forty-five (45) and fifty-four (54) hours per week from 8:00am to 5:00pm for five to six days a week. At all times, Plaintiff VICTOR RAMOS was required to work without any breaks even though Defendants deducted forty-five (45) minutes for each workday, resulting in unpaid wages due to Defendants' time-shaving policy.

(c) In 2017, Defendants paid Plaintiff VICTOR RAMOS at a straight-time hourly rate of $7.50 per hour. This is below the New York State minimum wage rate and below even that of the tip credit minimum wage rate for service employees in 2017. In 2017, the minimum wage rate was $11.00 and the tip credit minimum wage rate for service employees, assuming a valid tip credit, was $9.15. In 2018, Defendants paid Plaintiff VICTOR RAMOS at a straight-time hourly rate of $8.50 per hour. This is below the New York State minimum wage rate and below even that of the tip credit minimum wage rate for service employees in 2018. In 2018, the minimum wage rate was $13.00 and the tip credit minimum wage rate for service employees, assuming a valid tip credit, was $10.85. Throughout Plaintiff VICTOR RAMOS's employment with Defendants, Defendants failed to compensate Plaintiff for his overtime hours worked at one and a half times the regular rate. At all times, Plaintiff VICTOR RAMOS was a tipped employee.

(d) Plaintiff VICTOR RAMOS was also only compensated for hours that he worked between his scheduled work schedule, minus Defendants' breaktime deduction. However, at least twice a week, Plaintiff worked half an hour past his scheduled work hours, but Plaintiff VICTOR RAMOS was not compensated for this work. Including Defendants' breaktime deduction, Plaintiff VICTOR RAMOS was time-shaved approximately five (5) to six (6) hours

15

per week. Other tipped employees suffered from the same time-shaving policies implemented by Defendants.

28.    Plaintiff VICTOR RAMOS, a subclass of FLSA Collective Plaintiffs and the Tipped Subclass were paid below the minimum wage at an invalid "tip credit" minimum wage. With respect to Plaintiff VICTOR RAMOS, a subclass of FLSA Collective Plaintiffs and the Tipped Subclass, Defendants were not entitled to claim any tip credit allowance under the FLSA or NYLL because Defendants (i) failed to properly provide tip credit notice in violation of the FLSA; (ii) failed to inform them that the tip credit claimed by Defendants cannot exceed the amount of tips actually received by them in violation of the FLSA; (iii) failed to inform that all tips received by them are to be retained by them except pursuant to a valid tip pooling arrangement in violation of the FLSA; (iv) failed to inform that tip credit will not apply unless they have been informed of the foregoing tip credit notice requirement in violation of the FLSA, (v) claimed a tip credit that exceeded the statutory amount permissible, (vi) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek in violation of the FLSA and NYLL, (vii) illegally retained gratuities, (viii) implemented an invalid tip pooling because Defendants retained tips, (ix) implemented an invalid tip pooling by including Defendants, (x) failed to accurately track daily tips earned or maintain records thereof, (xi) failed to properly provide tip credit notice at hiring and annually thereafter in violation of the NYLL, and (xii) failed to provide a proper wage statement with every payment of wages informing Plaintiff VICTOR RAMOS and other tipped employees of the amount of tip credit deducted for each payment period, in violation of the NYLL.

29.    Plaintiff VICTOR RAMOS, a subclass of FLSA Collective Plaintiffs and the Tipped Subclass suffered from Defendants' retention of gratuities through Defendants' invalid tip pooling arrangement. Defendants implemented a policy at the Restaurants where Plaintiffs and other non-exempt tipped employees were subject to a tip pool they did not agree to, which was set by and enforced by Defendants, wherein Defendants participated in the tip pool. Defendants retained 15% of gratuities earned through deliveries and 50% of gratuities earned through catering deliveries. Such improper tip pooling policy invalidates Defendants' tip credit allowance.

30.    Plaintiff, a subclass of FLSA Collective Plaintiffs and the Tipped Subclass were also required to engage more than 20% of their working time in non-tipped related activities, including washing dishes, cleaning the restaurant, and transferring supplies and ingredients. All delivery persons were required to work in the kitchen when there were no delivery orders. Even though Defendants required tipped employees to engage in non-tipped activities for hours exceeding 20% of the total hours worked each workweek, Defendants improperly claimed tip credit for all hours worked by tipped employees.

31.    Plaintiffs and Class members regularly worked days that exceed ten hours in length, but Defendants unlawfully failed to pay Plaintiffs and Class members the spread of hours premium for workdays that exceeded ten hours in length.

32.    Defendants failed to reimburse Plaintiff VICTOR RAMOS and the Tipped Subclass for their "tools of the trade" and maintenance/repair costs. Plaintiff and the Tipped Subclass regularly spent up to $100 per month on expenses related to maintenance and repairs. Plaintiff and the Tipped Subclass were also required to purchase their own vehicles for deliveries, which were not reimbursed.

33.    Defendants improperly claimed a meal credit in violation of the New York Labor Law. Defendants claimed a meal credit of $6.50 per workday, which exceeds the statutory amount permissible. In addition, Plaintiffs and Class members were frequently unable to eat because they did not have free and clear meal breaks. Defendants also claimed a meal credit when no meals were provided for Plaintiffs and Class members.

34.    Defendants failed to provide Plaintiffs and the Class members with proper wage notices at hiring and annually thereafter. Plaintiffs did not receive proper wage notices either upon being hired or annually since the date of hiring in violation of the New York Labor Law.

35.    Plaintiffs and Class members did not receive any wage statements. Under New York Labor Law, Defendants were required to provide itemized listings of deductions taken on a wage statement with every payment of wages. Defendants failed to satisfy the requirements under the NYLL because Plaintiffs and Class members were paid either by cash or by a personal check without any paystubs.

36.    Defendants knowingly and willfully operated their business with a policy of not paying either the FLSA minimum wage or the New York State minimum wage, and the proper overtime rate thereof for hours worked over forty (40) in a workweek, to Plaintiffs, FLSA Collective Plaintiffs and Class members. Defendants were not entitled to claim any tip credits under FLSA or NYLL.

37.    Defendants knowingly and willfully operated their business with a policy of not paying the New York State "spread of hours" premium to Plaintiff and Class members, in violation of the NYLL.

38.    Defendants knowingly and willfully operated their business with a policy of failing to pay Plaintiffs, FLSA Collective Plaintiffs and Class members for all hours worked.

39.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the New York Labor Law.

40.    Defendants failed to provide proper wage notices to employees, at the beginning of employment and annually thereafter, pursuant to the requirements of the New York Labor Law.

41.    Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs, FLSA Collective Plaintiffs and Class members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

42.    Plaintiffs reallege and reaver Paragraphs 1 through 41 of this class and collective action Complaint as fully set forth herein.

43.    At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

44.    At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

45.    At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.

46.    At all relevant times, Defendants had a policy and practice of failing to pay the statutory minimum wage to Plaintiffs and FLSA Collective Plaintiffs for their hours worked. Defendants were also not entitled to claim any tip credits under the FLSA.

47.    At all relevant times, Defendants showed a willful disregard for the provisions of the FLSA by instituting an illegal tip-pooling scheme in which Defendants retained a portion of the tips and participated in the tip pool.

48.    At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiffs and FLSA Collective Plaintiffs for all overtime hours worked at the statutory rate of time and one-half, including overtime wages owed due to Defendants' policy of time-shaving.

49.    At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiffs and FLSA Collective Plaintiffs for all of their hours worked due to Defendants' policy of time shaving

50.    Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

51.    Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

52.    As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

53.    Due to the intentional, willful and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, damages representing disgorgement of illegally retained tips, plus an equal amount as liquidated

damages.

54.    Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

55.    Plaintiffs reallege and reaver Paragraphs 1 through 54 of this class and collective action Complaint as fully set forth herein.

56.    At all relevant times, Plaintiffs and Class members were employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

57.    Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay them proper wages in the lawful amount for hours worked. Defendants were not entitled to claim any tip credits.

58.    Defendants willfully violated Plaintiffs and the Class members' rights by instituting an illegal tip-pooling scheme in which Class members were required to share tips with Defendants. In doing so, Defendants willfully deprived Plaintiffs and Class members of their lawfully earned wages.

59.    At all relevant times, the Defendants had a policy and practice of refusing to pay Plaintiffs and Class members for all of their hours worked due to Defendants' policy of time shaving.

60.    Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay "spread of hours" premium to them for each workday that exceeded ten (10) or more hours.

61.    Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay compensation for tools of the trade maintenance/repair costs as required under the New York

Labor Law.

62.    Defendants willfully violated the rights of Plaintiffs and Class members by improperly claiming a meal credit in violation of the New York Labor Law requirements.

63.    Defendants knowingly and willfully operated their business with a policy of not providing wage statements as required under the New York Labor Law.

64.    Defendants knowingly and willfully operated their business with a policy of not providing all non-exempt employees proper wage notice, at date of hiring and annually thereafter, as required under the New York Labor Law.

65.    Due to the Defendants' New York Labor Law violations, Plaintiffs and Class members are entitled to recover from Defendants unpaid wages, disgorgement of illegally retained tips, unpaid spread of hours premium, unpaid tools of trade and maintenance/repair costs, improper deductions for meal credit, damages for unreasonably delayed payments, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to New York Labor Law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves, FLSA Collective Plaintiffs and Class members, respectfully request that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

b.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  An award of unpaid wages due under the FLSA and the New York Labor Law, including those due to time shaving and an invalid tip credit;

d.  An award of unpaid "spread of hours" premium due under the New York Labor Law;

e.  An award of unpaid tools of trade and maintenance/repair costs and improper meal credit deductions due under the New York Labor Law;

f.  An award equal to the amount of the improperly retained tips withheld by Defendants;

g.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to proper wages pursuant to 29 U.S.C. § 216;

h.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to the New York Labor Law;

i.  An award of prejudgment and postjudgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

j.  Designation of Plaintiffs as Representatives of the FLSA Collective Plaintiffs;

k.  Designation of this action as a class action pursuant to F.R.C.P. 23;

l.  Designation of Plaintiffs as Representatives of the Class; and

m.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.


Dated: January 28, 2019

                                 Respectfully submitted,

By:   */s/ C.K. Lee*
       C.K. Lee, Esq.

       LEE LITIGATION GROUP, PLLC
       C.K. Lee (CL 4086)
       Anne Seelig (AS 3976)
       30 East 39th Street, Second Floor
       New York, NY 10016
       Tel.: 212-465-1188
       Fax: 212-465-1181
       *Attorneys for Plaintiffs,*
       *FLSA Collective Plaintiffs and the Class*